IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE BAILEY, ) | Civil Action 19-1305 |
| ) | |
| Plaintiff, ) | Magistrate Judge Patricia L. Dodge |
| ) | |
| vs. ) | |
| ) | |
| JOHN WETZEL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION[1]

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 47) and enter judgment in their favor and against Plaintiff.

## I.    Relevant Background

Plaintiff, Maurice Bailey, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") who is housed at SCI Fayette. In September 1994 he was convicted in the Court of Common Pleas of Allegheny County (the "trial court") of first-degree murder in the stabbing death of his pregnant, fifteen-year-old girlfriend. In April 1995 the trial court sentenced him to a term of life imprisonment without the possibility of parole. Plaintiff was only fifteen years old at the time he committed the offense and, therefore, in accordance with *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) the trial court held a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), Plaintiff and all served and identified Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. (ECF Nos. 6, 16.) While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), the Court is aware of no authority holding that consent is necessary from defendants who are both unserved and unidentified at this stage of the litigation. Therefore, the undersigned has jurisdiction to decide dispositive motions and to enter final judgment in this case.

resentencing hearing on October 23, 2017.[2] (ECF No. 4, ¶¶ 13, 28-29); *see also Commonwealth v. Bailey*, No. 173 WDA 2018, 2019 WL 2484248, *1-2 (Pa. Super. Ct. June 14, 2019).

Plaintiff, who is proceeding *pro se* in this lawsuit, filed his Complaint (ECF No. 4) with this Court in December 2019.[3] The Complaint names as defendants the following DOC officials and employees (collectively, "Defendants"): Michael Glenn, a Special Agent with the DOC who testified at the October 23, 2017 resentencing hearing; Major Tammy Cesarino, Major John Rivello and Corrections Officer ("CO") Marc Skobel, who signed DOC documents that were introduced into evidence at the resentencing hearing; DOC Secretary John Wetzel; and SCI Fayette Superintendent Mark Capozza.

The Complaint alleges that Glenn testified at Plaintiff's resentencing hearing about Plaintiff's involvement in an incident that occurred on April 22, 2012 when Plaintiff ordered "a hit" on CO Joseph Berger,[4] as well as about the DOC's related decision to classify Plaintiff as a member of a Security Threat Group ("STG"). (*Id.*, ¶¶ 5, 19-25.) The Complaint alleges that Glenn's testimony regarding the April 22, 2012 incident was false because Plaintiff had denied his involvement during the investigation into it and "no disciplinary hearing or action was issued to Plaintiff" as a result of it. (*Id.*, ¶ 21; *see also id.*, ¶ 34.)

The Complaint further alleges that Glenn testified that Plaintiff's participation in the incident was confirmed by the STG Validation Panel's review, which was signed by other

---

[2] In 2012, the Supreme Court held in *Miller* that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against cruel and unusual punishment. In 2016, the Supreme Court held in *Montgomery* that *Miller* announced a substantive rule of constitutional law that applies retroactively to cases on collateral review. Plaintiff was one of many state prisoners who had to be resentenced in light of *Miller* and *Montgomery*.

[3] Plaintiff paid the filing fee. (ECF No. 3.) Accordingly, he is not proceeding *in forma pauperis*.

[4] In some documents in the summary judgment record CO Berger's last name is spelled "Burger."

defendants and which indicated, among other things, that Plaintiff had "contact with known associates for the [STG] called Original Men of Honor." (*Id.*, ¶ 23.) According to the allegations in the Complaint, this testimony was false because the DOC's documents related to Plaintiff's STG classification "indicated that Plaintiff is a member of the religion Nation of Islam[,]" and not the Original Men of Honor. (*Id.*, ¶¶ 24-25, 34.) The Complaint also alleges that Glenn falsely insinuated that Plaintiff sold or used drugs notwithstanding that "Plaintiff's criminal record is free of any conviction or charge of drug dealing, possession or use." (*Id.*, ¶¶ 26-27, 34.)

The trial court resentenced Plaintiff to a term of imprisonment of 35 years to life. The Complaint attributes the trial court's decision not to impose the 25-year minimum term sought by Plaintiff to Glenn's alleged false testimony since the DOC records and testimony that Plaintiff introduced at the hearing established his maturity and rehabilitation. (*Id.*, ¶¶ 15-18, 28-31.)

The Complaint did not identify numbered claims. It sets forth Plaintiff's claims as follows:

(1) Glenn committed "libel and slander defamation of Plaintiff's reformed name by misrepresenting the nature of [DOC] documents, repeatedly asserting an unfounded report [as] a validated fact and making untrue comments about Plaintiff's involvement with drugs while testifying under oath" in violation of Plaintiff's rights under the First, Sixth, Eighth, and Fourteenth Amendments. (*Id.*, ¶ 34);

(2) Secretary Wetzel's "authorization of" DOC documents related to the "unfounded investigation" into the April 22, 2012 incident and his "authorization of" DOC officials' classification of him as a member of a STG on the basis of his religious beliefs in the National of Islam violated and continues to violate Plaintiff's First, Sixth, Eighth, and Fourteenth Amendment rights as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*Id.*, ¶¶ 35-36);

(3) Superintendent Capozza's "authorization of" DOC officials' classification of Plaintiff as a member of a STG on the basis of his religious beliefs in the National of Islam violated and continues to violate his First and Fourteenth Amendment rights and RLUIPA. (*Id.*, ¶ 37); and

(4) Cesarino, Rivello, and Skobel "willingly signed [DOC] documents that classified [him] as a member of a [STG] for having beliefs in the Nation of Islam which were used against [him] in [the resentencing] hearing violated and continue

to violate" Plaintiff's rights under the First, Sixth, Eighth and Fourteenth Amendment rights and RLUIPA. (*Id.*, ¶ 38.)

Plaintiff seeks money damages, declaratory relief and an injunction that: (1) orders Glenn to issue a sworn statement renouncing the testimony he gave at the resentencing hearing; (2) directs Secretary Wetzel to issue a sworn statement that Plaintiff did not participate in the April 22, 2012 incident; and (3) directs Secretary Wetzel and Superintendent Capozza to cease having their officials classify Plaintiff as a member of a STG. (*Id.*, ¶¶ 40-48.)

The Defendants filed their Answer (ECF No. 17), and the parties conducted discovery. Following the close of discovery, Defendants filed the pending Motion for Summary Judgment (ECF No. 47) and supporting documents (ECF Nos. 48-50). Plaintiff filed his response in opposition to summary judgment and supporting documents (ECF No. 58.) Plaintiff argues that his STG classification "affected the length of his sentence, and will certainly decrease his opportunity to make parole." (ECF No 58, ¶ 22.) He explains that "the basis of this lawsuit" is so that "Defendant Glenn's false testimony" and his STG classification will not interfere with his ability to obtain parole. (*Id.*, ¶¶ 22, 47-48.)

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead,

this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*; *see, e.g., Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820

(3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

## III.    Relevant Facts[5]

The relevant facts in this case are largely undisputed and are based primarily upon the testimony and evidence introduced at Plaintiff's October 23, 2017 resenting hearing, the transcript of which is in the summary judgment record at Def's Ex. D, ECF No. 50-4. Attorney Erika Kreisman represented Plaintiff at the resentencing hearing. Prior to the hearing, a subpoena duces tecum was served upon Secretary Capozza's assistant, Rhonda House, requesting Plaintiff's Juvenile Lifer Information Packet. (ECF No. 49, ¶ 5.) That packet contained records regarding Plaintiff's disciplinary, educational, work, transfer/movement, grievance history and correctional plans. (*Id.*, ¶ 6.)

Plaintiff testified at the October 23, 2017 hearing and also presented testimony from the following individuals: his parents and sister; Robert Rhodes, a DOC employee who worked with its juvenile lifer population and who testified about Plaintiff's efforts to improve himself during his incarceration; and Dr. Alice Applegate, who testified that in her opinion Plaintiff could

---

[5] These facts are taken from Defendants' Statement of Material Facts Not in Dispute (ECF No. 49) and exhibits (ECF No. 50). Plaintiff did not file a response to this statement of facts in accordance with the Court's Local Rules. L.Cv.R. 56.C.1. Accordingly, Defendants' statement of facts are deemed admitted unless they are specifically denied or otherwise controverted by a separate concise statement. L.Cv.R. 56.E. In determining whether genuine issues of material fact exist in this case, the Court has examined the Complaint (ECF No. 4) and Plaintiff's response to Defendants' motion for summary judgment (ECF No. 58), both of which he signed under penalty of perjury, as well as the exhibits he attached to his response, including his affidavit (ECF No. 58-12). The Court has considered the factual assertions Plaintiff makes in those documents to the extent that they are based on his personal knowledge, sets out facts that would be admissible in evidence, and he is competent to testimony on the matters stated. *See* Rule 56(c)(4). Any conflict between Defendants' statement and Plaintiff's statements are noted.

"strongly be recommended for consideration of his sentence to be modified." (*Id.*, ¶¶ 7-12; Def's Ex. D, ECF No. 50-4 at 1-109.)

The Commonwealth presented testimony from Defendant Glenn and Bobbi Jamriska, the sister of the victim. It also introduced the statement given by the victim's father at Plaintiff's original April 1995 sentencing hearing. (*Id.*, ¶¶ 7, 13-20; Def's Ex D, ECF No. 50-4 at 109-49.)

Glenn testified that in 2012 Plaintiff was transferred out of SCI Pittsburgh because intelligence indicated that he placed a hit on CO Berger, who worked there. (Def's Ex. D, ECF No. 50-4 at 111-12, 118-19.) During his testimony, the Commonwealth introduced the permanent transfer petition and Glenn testified as to its contents. (*Id.* at 114-16; Pl's Ex. J, ECF No. 58-11 at 1.) The following was written in the section of that document that set forth the rational for the transfer:

> Inmate Bailey has been investigated and found to be the leader of a new security threat group at SCI Pittsburgh known as the original Men of Honor (OMH). This organization is patterned after the Fruits of Islam (FOI). The bylaws to this organization were confiscated and submitted to [the Field Investigative Unit (FIU)]. This organization is having conflicts with the white supremacists at SCI Pittsburgh. The OMH members have confronted the white supremacists about having their t-shirts off in the yard exposing their white supremacists tattoos, [Plaintiff], in particular. [Plaintiff] is using SCI Pittsburgh to recruit inmates that are due to be released and support his cause from outside the institution for financial gain. [Plaintiff and two other inmates] are the leadership of this organization. Information from a very reliable source has stated that these three (3) inmates plan on placing a hit on CO1 Joseph Burger due to his investigation into OMH. Inmate Bailey is not a productive inmate for a custody level 2 facility.

(*Id.* at 115; Pl's Ex. J, ECF No. 58-11.) According to Plaintiff, "Fruit of Islam (FOI) is the name of the men who belong to Nation of Islam." (ECF No. 58, ¶ 6.)

Glenn testified that the DOC's Field Investigative Unit "investigate[s] security threat group or gang activity within correctional facilities[,]" and that a validation panel must meet and determine if a prisoner meets certain criteria before he or she is "validated to be part of a security

threat." (*Id.* at 116.) During Glenn's testimony the Commonwealth introduced Plaintiff's STG Validation Panel Review, which was signed by Defendants Cesarino and Rivello on February 13, 2015 and which established that Plaintiff was validated as a member of a STG.[6] (*Id.* at 116-17; Pl's Ex. I, ECF No. 58-10.) Glenn explained that this document demonstrated that there "was sufficient evidence found to meet the criteria of the validation panel to indicate that [Plaintiff is] a member of a [STG] inside the facility." (*Id.* at 117.) He also said that Plaintiff's 2015 validation as a member of a STG was part of the "ongoing" investigation related to the April 22, 2012 incident. (*Id.* at 118.)

During cross-examination by Plaintiff's attorney, Glenn acknowledged that Plaintiff was never charged with a disciplinary misconduct or disciplined related for the April 22, 2012 incident involving CO Berger and described in the transfer petition. (Def's Ex. D, ECF No. 50-4 at 122, 125.) He testified that "[t]ransfer petitions don't required a hearing." (*Id.* at 122.)

Plaintiff's attorney also asked Glenn about the DOC's Security Threat Assessment Work Sheet regarding Plaintiff, which was signed by Defendant Skobel. That document recorded that Plaintiff is affiliated with Nation of Islam/Fruit of Islam. It indicated that the methods of verification used to classify Plaintiff's as a member of a STG were: (1) his own admission; (2) use/possession of symbols or logos; (3) possession of documents, such as copies of bylaws; and (4) contact with known associates of a STG. (Def's Ex. D, ECF No. 50-4 at 125-26; Pl's Ex. H, ECF No. 58-9.) Glenn testified that "[p]art of the validation process is the inmate is interviewed

---

[6] Plaintiff asserts that Glenn misrepresented the DOC's 2015 STG documents because they do not mention the group Original Men of Honor. (ECF No. 58, ¶¶ 41, 48.) However, the DOC's 2015 STG documents, which indicate Plaintiff is affiliated with the Nation of Islam/Fruit of Islam, and the 2012 transfer petition speak for themselves. Those documents were introduced and considered by the trial court, along with the other testimony and evidence presented at the resentencing hearing. Additionally, the transfer petition indicated that the Original Men of Honor "is patterned after the Fruit of Islam." (Pl's Ex. J, ECF No. 58-11.)

about their possible affiliation with the security threat group[,]" and he stated that the worksheet "indicate[d] that during the interview [Plaintiff] admitted that he's involved with the security threat group." (*Id.* at 126.)

Plaintiff's attorney asked Glenn to confirm that the DOC documents established that Plaintiff had no problems with drug or alcohol. (*Id.* at 131.) Glenn responded: "[a] lot of drug dealers don't use drugs." (*Id.* at 132.)

During her closing argument Plaintiff's attorney asserted that a term of 25 years to life imprisonment would be appropriate under the circumstances. The Commonwealth countered that the trial court should impose a minimum sentence of 55 years. (*Id.* at 162, 163.) The trial court imposed a term of 35 years to life, with credit for time served. The trial court judge stated that in making his ruling he considered Plaintiff's underlying conviction and age at the time of the commission of the offense, each witness's testimony, the exhibits introduced by both parties, Plaintiff's lack of past drug and/or alcohol use and his potential for rehabilitation. (*Id.* at 171-72.)

The Superior Court of Pennsylvania affirmed Plaintiff's judgment of sentence, *Commonwealth v. Bailey*, No. 173 WDA 2018, 2019 WL 2484248. (Pa. Super. Ct. June 14, 2019), and the Supreme Court of Pennsylvania denied a petition for allowance of appeal on December 23, 2019. (ECF No. 49, ¶¶ 27-30.)

The term STG refers to a group which may pose danger to the security of the institution, but is not necessarily prohibited from meeting. (*Id.*, ¶ 36.) In support of their motion for summary judgment, Defendants produced the affidavit of Captain James Giles. (Def's Ex. G, ECF No. 50-7.) He explained that the DOC duel classifies the Nation of Islam as "both a religion and a STG, because certain of its teachings have advocated racial violence and other threats to the security of DOC institutions." (*Id.*, ¶ 4.) Capt. Giles further explained that "an inmate who is validated as a

member of a STG does not necessarily suffer any adverse effects from the classification, though it may impact his housing assignment or change of security level." (*Id.*, ¶ 6.) "Validation as a member of a STG does not automatically result in a misconduct or transfer." (*Id.*, ¶ 5.)

Plaintiff has self-identified as a member of the Nation of Islam/Fruit of Islam since at least January 9, 2015. (ECF No. 49, ¶¶ 34, 37; Def's Ex. F, ECF No. 50-6 at 1-2; Pl's Ex. H, ECF No. 58-9.) Plaintiff asserts that Defendants provided him with "no notice National of Islam religious beliefs would subject him to STG classification." (ECF No. 58, ¶ 21.) He further avers that he "only learned of his STG status when Defendants presented two STG documents at his October 23, 2017 resentencing hearing." (*Id.*, ¶ 29.)

## IV.    Discussion

### A.    The Unidentified and Unserved Defendants

The Complaint lists two John Doe defendants. They are unnamed individuals who purportedly signed, along with Defendants Cesarino, Rivello and Skobel, the DOC STG documents introduced at Plaintiff's resentencing hearing.[7] (ECF No. 4, ¶¶ 7, 11.) The use of fictitious defendants is permissible "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty*, 336 F. App'x 248, 250 (3d Cir. 2009). Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." *See also Parker v. United States*, 197 F. App'x 171, 173 n.1 (3d Cir. 2006) (affirming dismissal of John Doe defendants where "[d]espite ample opportunity to do so, the John Doe defendants were never identified and served with the complaint"). "[I]n the

---

[7] Plaintiff previously moved to amend the Complaint to add two different proposed defendants—Tracey Shawley (a DOC employee who submitted an affidavit in response to some of his discovery requests) and Rhonda House (who is the DOC employee who was served the subpoena duces tecum requesting Plaintiff's Juvenile Lifer Information Packet). (ECF Nos. 46, 51.) The Court denied Plaintiff's motions for leave to amend by order dated September 14, 2020 (ECF No. 55.)

adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006) (citation omitted). Thus, fictitious parties should be dismissed if they are left unidentified at the close of discovery. *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). As a result, if a plaintiff fails to amend the complaint identifying the unnamed fictitious defendants, a court may dismiss those defendants before ruling on a summary judgment motion. *Blakeslee*, 336 F. App'x at 250.

Plaintiff did not amend the Complaint to properly identify and serve the unnamed defendants and discovery has now closed. Accordingly, the two John Doe defendants will be dismissed from this action.

B.   Plaintiff's Claims Against the Named Defendants

Plaintiff brings his constitutional tort claims against each defendant under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, § 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

"The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotations and citations omitted). "Next, a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). That is because only a person who "subjects,

or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See, e.g., Rode*, 845 F.2d at 1207; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer automatically responsible for the wrongdoing of employees, does not apply under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see, e.g. Rode*, 845 F.2d at 1207. Therefore, supervisor-defendants such as Secretary Wetzel and Superintendent Capozza cannot be held liable for every illegal act that takes place in the state correctional facility. Rather, they can be held liable only for their own conduct.

The Third Circuit Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating

the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

1.  Sixth Amendment Claims

In the Complaint Plaintiff asserts that Defendants violated his rights under the Sixth Amendment. (ECF No. 4, ¶¶ 34-38.) In his response to Defendants' summary judgment motion Plaintiff stated that he withdrew his Sixth Amendment claims. (ECF No. 58, ¶ 31.)

Accordingly, Plaintiff's Sixth Amendment claim against each defendant is dismissed.

2.  Claims Against Defendant Glenn

The Complaint claims that Glenn defamed Plaintiff during his testimony in violation of his rights under the First, Eighth and Fourteenth Amendments. (ECF No. 4, ¶ 34.) Plaintiff seeks money damages from Glenn and an injunction ordering him to issue a sworn statement renouncing his testimony. (*Id.*, ¶ 42-43, 47.)

Defendants argue that Glenn is entitled to summary judgment on the § 1983 claims because Plaintiff's constitutional rights were not implicated by Glenn's alleged "defamatory" testimony. They are correct. The Supreme Court has made clear "that federal courts are not to view defamatory acts as constitutional violations." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Consequently, defamation claims are not cognizable under § 1983. *See e.g., Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992) ("violations of state law, including defamation, are insufficient to state a claim under § 1983."); *Armstrong v. Furman*, No. 3:19-cv-141, 2020 WL 94859, *2 (W.D. Pa. Jan. 8, 2020).

13

The Court further notes that Plaintiff's claims against Glenn pertain entirely to the testimony he gave as a witness at the resentencing hearing. Witnesses who testify are absolutely immune under § 1983 for what they say during their testimony. *Briscoe v. Lahue*, 460 U.S. 325, 343 (1983); *see, e.g., Kulwicki v. Dawson*, 969 F.2d 1454, 1467 (3d Cir. 1992) ("Witnesses who testify falsely at trial are similarly protected [by absolute immunity].").

As for Plaintiff's supplemental state law claim of defamation against Glenn, Pennsylvania law provides that "the Commonwealth and its officials and employees acting within the scope of their duties, shall enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 PA. CONS. STAT. § 2310. The Pennsylvania legislature has not waived this immunity for intentional torts such as defamation. *See, e.g., Armstrong*, No. 3:19-cv-141, 2020 WL 94859 at *2. Therefore, under the doctrine of sovereign immunity Plaintiff cannot proceed with a state law defamation claim against Glenn brought against him in either his official or individual capacity. *Id.; see also Sears v. McCoy*, No. 1:17-cv-869, 2021 WL 254067, * 7 (M.D. Pa. Jan. 26, 2021) (sovereign immunity applies to Commonwealth employees in both their official and individual capacities so long as the employee was acting within the scope of their duties) (internal citations and quotations omitted); *Dec v. Pennsylvania State Police*, No. 2:12-cv-565, 2012 WL 6099078, *11-12 (W.D. Pa. Dec. 7, 2012) ("immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacity.").

Based upon the foregoing, Glenn is entitled to summary judgment in his favor with respect to all claims brought against him.

3.     RLUPIA Claims Against Secretary Wetzel, Superintendent Capozza, Cesarino, Rivello and Skobel

Plaintiff claims Secretary Wetzel, Superintendent Capozza, Cesarino, Rivello and Skobel violated and continue to violate RLUIPA. "Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007). Section 3 of RLUIPA governs religious exercise by institutionalized persons and it provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a).

RLUIPA does not permit actions against employees in their individual capacities and does not allow for the recovery of money damages. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Moreover, to the extent that Plaintiff may be pursuing his RLUIPA claims against a defendant in his or her official capacity, the Eleventh Amendment bars the recovery of money damages. *Scott v. Beard*, 252 F. App'x 491 (3d Cir. 2007). In tandem, these principles restrict Plaintiff's claims under RLUIPA to injunctive and declaratory relief. Accordingly, the defendants are entitled to judgment in their favor on the RLUIPA claims to the extent Plaintiff is seeking to impose liability against them in their individual capacities and/or obtain money damages from them.[8]

Among the defendants at issue, Plaintiff seeks injunctive relief only against Secretary Wetzel and Superintendent Capozza in their official capacities. In relevant part, he claims that he is entitled to a permanent injunction ordering them to "cease having their officials" classifying him

---

[8] Plaintiff seeks only money damages from Cesarino, Rivello and Skobel. (ECF No. 4, ¶¶ 42-43.)

as a member of a STG based upon his Nation of Islam religious beliefs. (ECF No. 4, ¶¶ 35-36, 46.)
Importantly, Plaintiff did not allege in the Complaint that the DOC's dual policy of classifying the
Nation of Islam as both a religion and a STG placed any burden on his ability to practice his
religion. In any event, there no evidence in the record that any burden has been placed on Plaintiff's
ability to practice his religion, let alone a substantial burden.

In opposition to Defendants' argument that he has no claim under RLUIPA, Plaintiff
directs the Court to Capt. Giles' affidavit in which he explains that an STG validation "may impact
[an inmate's] housing assignment or change his security level." (ECF No. 58, ¶¶ 4, 18; ECF
No. 50-7, ¶ 7.) That point does not create a material issue of fact precluding summary judgment
because there is no evidence that Plaintiff's ability to practice his religion has been affected by his
housing assignment or security level. In fact, Plaintiff acknowledges that Secretary Wetzel
"authorized every prison to facilitate [Nation of Islam] dietary practices for inmates"; has
facilitated and permitted the promotion of Nation of Islam services and events; and that his religion
is permitted to and does conduct services inside SCI Fayette. (ECF No. 58, ¶¶ 9-10, 12.)

Based upon the foregoing, Secretary Wetzel, Superintendent Capozza, Cesarino, Rivello
and Skobel are entitled to judgment in their favor with respect to Plaintiff's RLUIPA claims.

4.      Section 1983 Constitutional Tort Claims Against Secretary Wetzel,
        Superintendent Capozza, Cesarino, Rivello and Skobel

Plaintiff seeks to impose liability upon Cesarino, Rivello and Skobel because they signed
the STG-related documents "which were used against him" at the sentencing hearing. (ECF No. 4,
¶ 38.) In addition, he claims that Secretary Wetzel is liable to him for allegedly authorizing the
investigation of the April 22, 2012 incident, and that both Secretary Wetzel and Superintendent
Capozza are liable for allegedly authorizing the other defendants to classify him as a member of a
STG. (*Id.*, ¶¶ 35-37.) As previously explained, in addition to seeking money damages from

Secretary Wetzel and Superintendent Capozza, Plaintiff also seeks an injunction ordering them to cease having DOC officials classify him as a member of a STG based upon his religious beliefs. (*Id.*, ¶¶ 42-43, 46.)

Defendants argue that Secretary Wetzel, Superintendent Capozza, Cesarino, Rivello and Skobel are entitled to summary judgment on the § 1983 constitutional tort claims Plaintiff brought against them because they lacked personal involvement in any alleged wrongdoing, and also because there is no evidence his constitutional rights were implicated by the admission of his STG documents at the resentencing hearing.

There is no evidence that Secretary Wetzel had the requisite personal involvement in the investigation in the "unfounded investigation" into the April 22, 2012 incident. Petitioner's claim against Secretary Wetzel regarding that incident is predicated solely on the operation of respondeat superior which, as explained above, does not apply to claims brought under § 1983. *See, e.g., Rode*, 845 F.2d at 1207. Therefore, Secretary Wetzel is entitled to summary judgment on Plaintiff's claim that he violated his constitutional rights for authorizing the investigation of the April 22, 2012 incident about which Glenn testified at the resentencing hearing.

As for Plaintiff's claims regarding the STG validation documents that were introduced at the resentencing hearing, Cesarino, Rivello and Skobel signed those documents. Thus, they were personally involved in Plaintiff's STG classification (although not, as discussed below, in any constitution deprivation). As for Secretary Wetzel and Superintendent Capozza, they had no personal involvement in the STG classification decision. However, Plaintiff is seeking to hold them liable for maintaining the STG policy that Cesarino, Rivello and Skobel applied. Since Plaintiff is suing Secretary Wetzel and Superintendent Capozza in their official capacities and named them as DOC officials who could respond to his requested injunctive relief, Plaintiff could

proceed with his claims against them if he could demonstrate that his STG classification is subjecting him to an ongoing violation of his constitutional rights. *Parkell*, 833 F.3d at 332 (the standard for supervisory liability does not apply in injunctions, so that a defendant's lack of "personal involvement in past constitutional violations does not preclude…prospective injunctive relief" against a defendant "for ongoing violations.").

Thus, the issue with respect to the STG-classification claims against these defendants is not whether any of them had personal involvement in Plaintiff's STG classification. Rather, it is whether Plaintiff can show that the introduction of the DOC's STG classification documents at his resentencing hearing violated or continues to violate Plaintiff's constitutionally protected rights.

This takes the Court to Defendants' argument that there is no evidence that Plaintiff's constitutional rights were implicated by his STG classification. Defendants are correct. An inmate has no constitutional right to a particular classification status, *see, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976), and Plaintiff has no claim against any defendant regarding his STG classification under the circumstances of this case.

Plaintiff argues that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment because he did not personally receive notice that his religious beliefs would result in his classification as a member of a STG until the date of his October 23, 2017 resentencing hearing. Whether he received such notice, however, would only be material if he had a liberty interest in his custodial classification. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995); *Fraise v. Terhune*, 283 F.3d 506, 522-23 (3d Cir. 2002). The Court of Appeals has explained that:

> A prisoner may be deprived of a liberty interest in violation of the Constitution in two ways: (1) when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing, [*Vitek v. Jones*, 445 U.S. 480, 488 (1980)] and

> (2) when state statutes and regulations create a liberty interest in freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" thereby triggering due process protection, *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Meachum v. Fano*, 427 U.S. 215, 223-27, 96 S. Ct. 2532, 49 L. Ed.2d 451 (1976). The first is the so-called independent due process liberty interest, while the latter is the so-called state-created liberty interest.

*See, e.g., Fraise*, 283 F.3d at 522-23 ("as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight" and, therefore, the prisoner must demonstrate a deprivation of a state-created liberty interest to trigger due process protections) (internal quotation and citations omitted).

The summary judgment record is devoid of any evidence from which a reasonable jury could conclude that Plaintiff had either an independent due process liberty interest or a state-created liberty interest in his classification as a member of a STG. *See, e.g., Fraise*, 283 F.3d at 522-23 (prisoners' placement in a special unit for STG members did not implicate a liberty interest because they were not subjected to confinement that exceeded the sentence imposed upon them and they could not establish they were subjected to an "atypical and significant" hardship). Therefore, because Plaintiff is unable to demonstrate that he was deprived of any liberty interest in his STG classification, it is immaterial that Defendants did not provide him with notice that his religious beliefs would subject him to STG classification.

In an attempt to avoid this conclusion, Plaintiff contends that his STG classification resulted in him receiving a longer sentence. There is no merit to this argument. Evidence pertaining to his STG classification was just one of the many categories of evidence introduced at his

resentencing hearing, and the judge who presided over the hearing expressly stated that he considered all of the evidence in imposing Plaintiff's sentence.[9]

Plaintiff also argues that he will be denied parole due to his STG classification. Even if this were true, that factor alone is not sufficient to trigger a liberty interest. *See Wilkinson*, 545 U.S. at 224 (plaintiffs' placement in supermax facility *with highly restrictive conditions* and also disqualified an otherwise eligible inmate for parole consideration imposed an atypical and significant hardship giving rise to a liberty interest). Additionally, Pennsylvania law provides that the Pennsylvania Board of Probation and Parole shall consider a number and variety of factors when making the decision whether to grant a prisoner parole, 61 Pa. Cons. Stat. § 6135, and STG classification does not disqualify an inmate from parole. Finally, there is no evidence that Plaintiff has been considered for and denied parole and, therefore, it is entirely speculative as to what relevance, if any, his STG classification may have on parole decisions. *See, e.g.*, *Dawson v. Frias*, No. 09-cv-6050, 2010 WL 1379894, *2 (D. N.J. Mar. 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve as a bases for a valid claim), aff'd, 397 F. App'x 739 (3d Cir. 2010).

In conclusion, Plaintiff has no procedural due process claim against Secretary Wetzel, Superintendent Capozza, Cesarino, Rivello or Skobel and, therefore, they are entitled to summary judgment in their favor on that claim.

As Defendants point out, there is no other basis from which a reasonable jury could conclude that they violated Plaintiff's constitutional rights. In his response to Defendants'

---

[9] Plaintiff does not have a constitutional interest in the criminal sentence of his choosing, and he received the required due process when the trial court resentenced him on October 23, 2017. He had a hearing at which he was represented by counsel; he was present at that hearing; he introduced evidence; he was able to cross-examine witnesses, including Glenn; and he was able to and did appeal the trial court's sentence to the Pennsylvania Superior Court.

summary judgment motion, Plaintiff makes assertions pertaining to his STG classification and its alleged effect on the conditions of his confinement at SCI Fayette. These assertions are based upon new theories of liability which are separate and distinct from the allegations of his Complaint. For example, Plaintiff argues that the DOC's classification of him as a member of a STG violates: (1) his equal protection rights and is discriminatory because Catholic and Protestant groups are not so classified (ECF No. 58, ¶¶ 6-7; ECF No. 58-12); (2) the Establishment Clause of the First Amendment for persecuting him for his religious beliefs (*id.*, ¶ 16-17); (3) the Free Exercise Clause of the First Amendment by allegedly placing burdens on the practice of his religion (*id.*, ¶ 18); and his Eighth Amendment right to be free of cruel and unusual punishment for classing him as a STG member when he has been misconduct free for 20 years (*id.*, ¶¶ 33-35.)

Plaintiff did not raise these claims in his Complaint and he cannot raise new claims in response to a motion for summary judgment. *See, e.g., Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387, 392-93 (3d Cir. 2004) (discussing cases that did not allow new claims raised in opposition to a motion for summary judgment); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-16 (11th Cir. 2004) (party cannot amend by adding new claims through argument in a brief opposing summary judgment). At this stage of the proceedings, Plaintiff is limited to the claims made in his Complaint, which pertain only to his October 23, 2017 resentencing hearing and the injuries he allegedly sustained as a result of Glenn's testimony and the introduction of the DOC's STG documents.

Thus, for the reasons given, the Court will grant judgment in Secretary Wetzel's favor on the claim seeking to hold him liable for the investigation into the April 22, 2012 incident. The Court will also grant summary judgment in favor of Secretary Wetzel, Superintendent Capozza, Cesarino, Skobel and Rivello on Plaintiff § 1983 claims alleging that they are liable to him for his

STG classification since there is no evidence that that classification violated or continues to violate any constitutionally-protected right.

**V.      Conclusion**

Based upon the foregoing, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 47), enter judgment in their favor and against Plaintiff and dismiss the unidentified and unserved defendants from this action.

An appropriate Order follows.


Dated:  March 19, 2021                              BY THE COURT:


                                                    /s/ Patricia L. Dodge
                                                    PATRICIA L. DODGE
                                                    United States Magistrate Judge